UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SANDRA ELENA ROPER,                         :

                    Plaintiff,        :         05 Civ. 7664 (WHP)

    -against-                               :         MEMORANDUM AND ORDER

CHARLES J. HYNES et al.,                    :

                  Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

           Sandra Elena Roper ("Roper" or "Plaintiff") brings this federal civil rights action against Defendants Charles J. Hynes ("DA Hynes"), the City of New York (the "City") (DA Hynes and the City collectively the "City Defendants"), Joan B. Carey, Deputy Chief Administrative Judge, New York City Courts ("Judge Carey"), Jonathan Lippman, Chief Administrative Judge, New York State Office of Court Administration ("Judge Lippman"), Judith S. Kaye, Chief Judge of the State of New York ("Judge Kaye"), the New York State Unified Court System ("UCS"), the New York State Office of Court Administration ("OCA") and the State of New York (the "State") (Judge Carey, Judge Lippman, Judge Kaye, the UCS, OCA and the State collectively the "State Defendants," Judge Carey, Judge Lippman, Judge Kaye and DA Hynes the "Individual Defendants" and all the City and State Defendants collectively the "Defendants").  The City and State Defendants have filed two separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b).  For the reasons set forth below, the motions to dismiss are granted in part and denied in part.

BACKGROUND

For purposes of the instant motions the Court accepts the following allegations from Roper's Complaint as true:  Roper is a black, Hispanic, female attorney who has practiced civil rights law.  (Complaint, dated Aug. 30, 2005 ("Compl."), ¶¶ 1-2.)  From July through September, 2001, Roper ran against DA Hynes in the Democratic party primary for Kings County District Attorney.  (Compl. ¶ 4.)  After learning of Roper's candidacy, Hynes threatened various members of her campaign team with indictment unless they withdrew from involvement in the primary race.  (Compl. ¶ 7.)  Roper lost the primary to DA Hynes, but stated her intention to run again in 2005.  (Compl. ¶ 13.)

After she lost the 2001 Democratic primary to DA Hynes, Roper abandoned her private law practice and, in or around January 2002, took a job as court attorney for New York City Civil Court Judge Peter Sweeney.  (Compl. ¶¶ 14-15.)  Roper was hired as an "at will" employee.  (Compl. ¶ 65.)  In 2002 Roper ran for a seat in the State Assembly but lost.  (Compl. ¶¶ 17, 19.)  In 2005, Roper again challenged DA Hynes for the office of Kings County District Attorney.  (Compl. ¶ 34.)

On November 8, 2001 May Ward ("Ward"), a former client of Roper's, filed a complaint with the Grievance Committee of the Appellate Division, Second Department. (Compl. ¶¶ 21, 26-27.)  The complaint apparently concerned Roper's prior pro bono representation of Ward in a predatory lending case.  (Compl. ¶¶ 27-28, 30.)  The Grievance Committee dismissed those charges on September 26, 2002.  (Compl. ¶ 27.)  In addition, on August 16, 2001 Ward filed a separate complaint with the Kings County District Attorney, apparently concerning the same subject matter.  (Compl. ¶¶ 21, 23-25, 29-33.)  Notwithstanding the Grievance Committee's dismissal of Ward's complaint, DA Hynes initiated a criminal

investigation of Roper.  (Compl. ¶¶ 22, 25.)  In or about January 2002, DA Hynes appointed a Special Prosecutor to handle the investigation.  (Compl. ¶ 25.)

Roper claims that when DA Hynes initiated the criminal investigation against her, he knew Ward to be a "professional plaintiff" with "delusional propensities" who had previously made similar complaints about other attorneys to the District Attorney's office.  (Compl. ¶¶ 23, 34.)  Indeed, prior to August 2001, DA Hynes had never initiated a criminal investigation in response to any of Ward's complaints.  (Compl. ¶¶ 22-25.)  Roper alleges that DA Hynes' differential treatment of her resulted from her decision to run against DA Hynes in 2001 and her promise to run against him in the future.  (Compl. ¶ 38.)

On May 17, 2003, Roper received a grand jury subpoena for her records relating to Ward's complaint.  (Compl. ¶ 29.)  This was the first time Roper learned that she was the subject of a grand jury investigation.  (Compl. ¶ 29.)  On June 9, 2003, Roper was indicted for grand larceny in the third degree, forgery in the second degree and filing a false instrument in the first degree.  (Compl. ¶ 30.)  Roper notified Judge Sweeney of the pending indictment, and avers that Judge Sweeney notified the Chief Judge of the Brooklyn Civil Court, who in turn notified the Chief Judge of the New York City Civil Court.  (Compl. ¶ 40.)

Roper was taken into custody on June 16, 2003 and promptly released.  (Compl. ¶ 42.)  Immediately following her release, Roper met with the Chief Judge of the New York City Civil Court, who informed her that she was not suspended from work.  (Compl. ¶ 44.)  However, the Chief Judge informed Roper that she had spoken with the Chief Judge of the Brooklyn Civil Court, who thought "that it may be better that Plaintiff stay home for a while."  (Compl. ¶ 44.)  The Chief Judge also told Roper that Judge Carey, Deputy Chief Administrative Judge of the

New York City Courts, would be the "decision-maker" regarding her employment.  (Compl. ¶ 44.)

On June 19, 2003 Roper began receiving calls from journalists claiming that she had been terminated from her employment as a court attorney.  (Compl. ¶ 48.)  Until Roper received these phone calls, neither she nor Judge Sweeney knew she had been terminated. (Compl. ¶¶ 48-49.)  Roper received a termination letter from Judge Carey the following day, which did not state any reason for the termination.  (Compl. ¶¶ 51-52.)  Plaintiff was tried for fraud, forgery and larceny in early 2005.  (Compl. ¶¶ 31-32.)  After a mistrial, all criminal charges against her were dismissed.  (Compl. ¶¶ 31-32.)

Roper claims that she was treated differently from judges and other court employees who were indicted.  (Compl. ¶¶ 54-55, 61-62.)  Specifically, Roper alleges that Defendants reinstated one court employee the day after he was indicted, while another was permitted to retire after his indictment.  (Compl. ¶ 55.)  Additionally, Roper claims that one judge indicted on criminal charges continued to receive his salary until the disposition of the charges against him.  (Compl. ¶¶ 61-62.)  Roper alleges that she was subjected to discriminatory treatment at the "behest, influence, or urgings" of defendant Hynes.  In particular, Roper alleges that Hynes discussed her criminal investigation with Carey during the 2001 election.  (Compl. ¶ 64.)  Carey also contacted Sweeney in 2002 to inform him that Roper had been terminated from a previous job – an act that Roper implies was taken at the initiative of DA Hynes.  (Compl. ¶¶ 65-67.)  In sum, Roper asserts that her indictment served only as a pretext for the true reasons for her termination, namely, being a black, Hispanic woman who campaigned against DA Hynes in the 2001 election.  (Compl. ¶ 56.)  Roper filed this action on July 30, 2005.

## DISCUSSION

### I.      Standard on a Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the allegations in the complaint as true and construe all reasonable inferences in a plaintiff's favor. Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 89-90 (2d Cir. 2004); see also Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).  A court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); accord Jacobs v. Ramirez, 400 F.3d 105, 106 (2d Cir. 2005).  Dismissal is proper when the plaintiff fails to plead the basic elements of a cause of action.  See In re Scholastic Corp. Secs. Litig., 252 F.3d 63, 69 (2d Cir. 2001).  The issue on a motion to dismiss is not "whether plaintiff will prevail, but simply whether she is entitled to offer evidence to support her claims." Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 788 (2d Cir. 2002).

### II.      Claims and Defenses

Roper claims that Defendants violated her rights pursuant to 42 U.S.C. §§ 1981 and 1983 and the First, Fifth, and Fourteenth Amendments of the Constitution by commencing a criminal investigation against her, initiating a criminal prosecution against her and terminating her employment as a court attorney.  In addition, Plaintiff asserts a § 1983 claim against DA Hynes for abuse of process.  Finally, Plaintiff asserts claims for emotional distress and prima facie tort against all defendants.

Defendants contend that Roper fails adequately to plead her claims.  All Defendants except the City also assert immunity under the Eleventh Amendment and qualified

immunity.  Finally, DA Hynes contends that he is entitled to absolute prosecutorial immunity.
The Court considers each of these claims and defenses seriatim.

      A.     <u>Eleventh Amendment Immunity</u>

      The Eleventh Amendment provides:  "The Judicial power of the United States
shall not be construed to extend to any suit in law or equity, commenced or prosecuted against
one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign
State."  U.S. Const. amend. XI.  As the Second Circuit has explained:

> The Supreme Court has consistently held that the federal courts
> lack jurisdiction not only over suits against a state brought by
> citizens of other states, as the literal language of the Amendment
> provides, but also over suits against such states brought by their
> own citizens.  Thus, it is clear that, with few exceptions, federal
> courts are barred from entertaining suits by a private party against
> a state in its own name.

<u>Dwyer v. Regan</u>, 777 F.2d 825, 835 (2d Cir. 1985) (citations omitted); <u>accord</u> <u>Dube v. State</u>
<u>Univ. of N.Y.</u>, 900 F.2d 587, 594 (2d Cir. 1990) (quoting <u>Dwyer</u>), <u>cert. denied</u>, 501 U.S. 1211
(1991); <u>Saint-Fleur v. City of New York</u>, No. 99 Civ. 10433 (WHP), 2000 WL 280328, at *2
(S.D.N.Y. Mar. 14, 2000).

      "The Eleventh Amendment bar to suit is not absolute."  <u>Port Auth. Trans-Hudson</u>
<u>Corp. v. Feeney</u>, 495 U.S. 299, 304 (1990).  However, as the Supreme Court recently explained,
it has recognized only "two circumstances in which an individual may sue a State.  First,
Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth
Amendment – an Amendment enacted after the Eleventh Amendment and specifically designed
to alter the federal-state balance.  Second, a State may waive its sovereign immunity by
consenting to suit."  <u>Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S.
666, 670 (1999) (citations omitted).

However, neither exception to Eleventh Amendment immunity applies in this case. First, it is well-settled that "the civil rights statute 42 U.S.C. § 1983 does not override the [E]leventh [A]mendment." Minotti v. Lensink, 798 F.2d 607, 609 (2d Cir. 1986); see also Quern v. Jordan, 440 U.S. 332, 341 (1979); Edelman v. Jordan, 415 U.S. 651, 675-77 (1974); Dube, 900 F.2d at 594 ("Although Congress is empowered under section five of the Fourteenth Amendment to override Eleventh Amendment immunity and 'to enforce "by appropriate legislation" the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority,' . . . it is well-settled that 42 U.S.C. § 1983 does not constitute an exercise of that authority") (internal citations omitted). The State of New York has not waived its Eleventh Amendment immunity from federal suit. Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 39-40 (2d Cir. 1977); Estes-El v. N.Y. State Dep't of Motor Vehicles, No. 95 Civ. 3454 (JFK), 1997 WL 342481, at *3 (S.D.N.Y. June 23, 1997); DiNapoli v. DiNapoli, No. 95 Civ. 7872 (SS), 1995 WL 604607, at *1 (S.D.N.Y. Sept. 22, 1995) ("New York has not consented to be sued in federal court.").

In addition, Eleventh Amendment immunity extends to state agencies and state officials acting in their official capacities.[1] Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of a state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself."); see also Ying Jin Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); Huminski v. Corsones,

---

[1] Although suits for injunctive or other prospective relief are permitted against state officials acting in their official capacities, see, e.g., Huminski, 396 F.3d at 70; Gaby v. Bd. of Trs. of Cmty. Technical Colls., 348 F.3d 62, 63 (2d Cir. 2003), the Complaint does not assert any such claim and Roper's counsel conceded at oral argument that she does not seek such relief. (Mar. 14, 2006 Tr., at 17-19.)

396 F.3d 53, 70 (2d Cir. 2005) ("[S]tate officials cannot be sued in their official capacities for retrospective relief under section 1983."); United States v. City of Yonkers, 96 F.3d 600, 619 (2d Cir. 1996) (New York State Education Department and State Board of Regents entitled to Eleventh Amendment immunity); Jackson v. Johnson, 985 F. Supp. 422, 426 (S.D.N.Y. 1997) (New York State Department of Correctional Services entitled to Eleventh Amendment immunity).

Nor can Roper sue DA Hynes for damages on the ground that he is an elected Kings County (as opposed to state) official. "When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988), cert. denied, 488 U.S. 1014 (1989); see also N.Y. Exec. Law § 63 (2); N.Y. Crim. Proc. Law § 1.20 (32). Thus, the District Attorney's office is protected by the Eleventh Amendment from actions for monetary damages arising from alleged decisions that are inextricably tied to the specific decision to prosecute. See Rodriguez v. State of New York, No. 95 Civ. 3639 (SHS), 1996 WL 197749 (S.D.N.Y. Apr. 23, 1996); Feerick v. Sudolnik, 816 F. Supp. 879, 887 (S.D.N.Y. 1993), aff'd, 2 F.3d 403 (2d Cir. 1993).

In view of this well-settled authority, all of Roper's claims against the State, the OCA and the UCS are dismissed without leave to replead, as are Roper's claims against Judge Kaye, Judge Lippman, Judge Carey and DA Hynes for acts taken in their official capacities.

     B.     Absolute and Qualified Immunity

        1.     Absolute Prosecutorial Immunity

DA Hynes asserts that he is entitled to absolute prosecutorial immunity for acts taken in his individual capacity. The entitlement of a prosecutor to absolute immunity from a

claim for damages against him in his individual capacity on account of his official actions depends principally on the nature of the function performed.  See, e.g., Ying, 996 F.2d at 530; Lawson v. Abrams, 863 F.2d 260, 262 (2d Cir. 1988).  It is well settled that prosecutors performing prosecutorial activities that are "intimately associated with the judicial phase of the criminal process" are entitled to absolute immunity from an action for damages under § 1983. Imbler v. Pachtman, 424 U.S. 409, 430 (1976); see also Burns v. Reed, 500 U.S. 478, 493 (1991); Robison v. Via, 821 F.2d 913, 918 (2d Cir. 1987); Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981).  A prosecutor thus has absolute immunity to decide whether to commence a prosecution and make similar decisions.  See, e.g., Imbler, 424 U.S. at 431 (absolute immunity for "initiating a prosecution"); Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1987) (absolute immunity for filing a criminal information); Taylor, 640 F.2d at 453 (absolute immunity for negotiating a guilty plea); Powers v. Coe, 728 F.2d 97, 103-04 (2d Cir. 1984) (absolute immunity for entering an agreement not to prosecute); Schloss v. Bouse, 876 F.2d 287, 290 (2d Cir. 1989) ("[A]s a matter of logic, absolute immunity must also protect the prosecutor from damages suits based on [the] decision not to prosecute.").

However, absolute prosecutorial immunity extends only so far as is necessary either to protect the prosecutor against retaliation and hindsight challenges with respect to his prosecutorial decisions or to guarantee the effective functioning of the judicial process.  See, e.g., Imbler, 424 U.S. at 431 n. 33; Robison, 821 F.2d at 918; Taylor, 640 F.2d at 452.  "Most other activities are characterized as administrative or investigative and, thus, merit less protection." Fields v. Soloff, 920 F.2d 1114, 1120 (2d Cir. 1990).  Thus, a prosecutor's performance of investigative or administrative duties is protected only by qualified immunity.  Ying, 996 F.2d at 530-31; Pinaud v. County of Suffolk, 52 F.3d 1139, 1150-51 (2d Cir. 1995) (finding prosecutor

entitled only to qualified immunity for decision to transfer an inmate between prisons after all charges against him had been dismissed); <u>Powers</u>, 728 F.2d at 103-04 (finding prosecutor entitled only to qualified immunity for authorizing and directing illegal wiretapping).

        Absolute prosecutorial immunity therefore bars Roper's claims against DA Hynes to the extent they involve conduct associated with the decision to prosecute, such as issuing a subpoena and appointing a Special Prosecutor.  <u>See</u> <u>Pleasant v. Lovell</u>, 876 F.2d 787, 805 (11th Cir. 1989) (finding that IRS agents who served grand jury subpoenas on behalf of Assistant United States Attorneys were entitled to absolute immunity from constitutional tort claims); <u>see also</u> <u>Bernard v. County of Suffolk</u>, 356 F.3d 495, 503 (2d Cir. 2004) (finding that absolute prosecutorial immunity cannot be overcome by allegations that the prosecutor acted intentionally or maliciously).  There are no allegations in the Complaint that DA Hynes was trying simply to catch a suspect, perform an administrative task, or provide legal advice.  <u>See</u> <u>Powers</u>, 728 F.2d at 103-04; <u>Pinaud</u>, 52 F.3d at 1150-51; <u>Kalina v. Fletcher</u>, 522 U.S. 118, 126 (1997).  Accordingly, Roper's claims against DA Hynes for appointing the Special Prosecutor are barred by absolute prosecutorial immunity, and those claims are dismissed without leave to replead.

        By contrast, DA Hynes is not entitled to absolute prosecutorial immunity on Roper's claims that he (1) initiated a criminal investigation against her prior to the appointment of the Special Prosecutor; or (2) arranged her dismissal by influencing Judge Carey.  These allegations are not directly related to DA Hynes' prosecutorial functions.  <u>See</u> <u>Ying</u>, 996 F.2d at 530; <u>Powers</u>, 728 F.2d at 103.

        2.    <u>Qualified Immunity</u>

        To establish a defense of qualified immunity, a defendant must show that "(1) the defendant's actions did not violate clearly established law, or (2) it was objectively reasonable

for the defendant to believe that his actions did not violate such law." <u>Ford v. Moore</u>, 237 F.3d 156, 162 (2d Cir. 2001). "Not only must the facts supporting the [qualified immunity] defense appear on the face of the complaint, but . . . [a motion to dismiss] may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." <u>McKenna v. Wright</u>, 386 F.3d 432, 436 (2d Cir. 2004) (citation and internal quotation omitted).

As discussed below, Roper's claims against all Defendants except Judge Carey are dismissed on grounds other than qualified immunity. Accordingly, this Court need not consider the qualified immunity defense of any Defendant other than Judge Carey. Moreover, the Complaint adequately pleads that Judge Carey violated clearly established law by denying Roper her right to equal protection under the Fourteenth Amendment. Accordingly, dismissal of Roper's Fourteenth Amendment claim against Judge Carey on qualified immunity grounds is not appropriate at this stage of the litigation.

C.    <u>Section 1983 Claims</u>

42 U.S.C. § 1983 provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." Roper asserts § 1983 claims against all Defendants for (1) commencing a criminal investigation, launching a retaliatory prosecution and terminating her employment in violation of her First Amendment rights to free speech and participation in the political process; and (2) commencing a criminal investigation against her and terminating her employment immediately on her indictment in violation of her equal protection and due process rights under the Fourteenth

11

Amendment.[2]  To the extent these claims are not barred by applicable immunities, this Court

considers them with respect to the City and the Individual Defendants.

        1.    <u>Individual Defendants</u>

        To establish individual liability under Section 1983, a plaintiff must allege (1) the

personal involvement of the defendant in the alleged deprivation of rights; (2) that the defendant

is a "person" for purposes of the statute; (3) that the defendant acted "under color of state law;"

and (4) that the defendant caused a deprivation of the plaintiff's federal rights.  <u>Back v. Hastings</u>

<u>on Hudson</u>, 365 F.3d 107, 122 (2d Cir. 2004); <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d

Cir. 1977).  The Individual Defendants claim that Roper has failed to plead facts adequate to

establish both the first and fourth of these elements.

        As to the first prong of the <u>Back</u> test, "[i]t is well settled in this Circuit that

personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an

award of damages under § 1983."  <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) (internal

quotation omitted); <u>see also</u> <u>Back</u>, 365 F.3d at 127.

> Personal involvement [of a defendant] can be shown by evidence
> that: (1) the defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being informed of
> the violation . . . failed to remedy the wrong, (3) the defendant
> created a policy or custom under which unconstitutional practices
> occurred, or allowed the continuance of such a policy or custom,
> (4) the defendant was grossly negligent in supervising subordinates
> who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference . . . by failing to act on information
> indicating that unconstitutional acts were occurring.

<u>Colon</u>, 58 F.3d at 873 (internal quotation omitted).  The fourth prong of the <u>Back</u> test is a

---

[2] Roper also purports to bring a claim under the Fifth Amendment's due process clause, but that
provision is inapplicable here because Roper asserts no claim against the United States, and her
claims are otherwise encompassed by the Fourteenth Amendment.  <u>Tylena M. v. Heartshare</u>
<u>Children's Servs.</u>, 390 F. Supp. 2d 296, 311 (S.D.N.Y. 2005) (dismissing Fifth Amendment
claim for failure to allege federal action); <u>Taylor v. Evans</u>, 72 F. Supp. 2d 298, 305 n.3
(S.D.N.Y. 1999) (same).

question of substantive law and must be evaluated based on the specific claim at issue.

a.      First Amendment Claims

(i)      Judge Kaye and Judge Lippman

The Complaint contains no allegations indicating that Judge Kaye or Judge Lippman were personally involved in the violation of Roper's constitutional rights.  Accordingly, all § 1983 claims against Judge Kaye and Judge Lippman are dismissed.

(ii)      Judge Carey

The Complaint alleges that Judge Carey was the "decision-maker" with respect to Roper's employment, and that she signed the letter terminating Roper.  (Compl. ¶¶ 44, 52.) Therefore, Roper has adequately pled Judge Carey's personal involvement in her termination. See Schallop v. N.Y. State Dep't of Law, 20 F. Supp. 2d 384 (N.D.N.Y. 1998) (denying summary judgment where record established that defendant possessed the authority to hire and fire plaintiff and where defendant had devised evaluation procedures affecting plaintiff's employment).  The Court therefore turns to the question of whether the Complaint alleges that Judge Carey's involvement caused a deprivation of Roper's federal rights.

In order to sustain a claim for First Amendment retaliation, a plaintiff must demonstrate that: "(1) [her] speech addressed a matter of public concern, (2) [she] suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, 'so that it can be said that [the] speech was a motivating factor in the determination.'"  Mandell v. County of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)); see also Locurto v. Safir, 264 F.3d 154, 166 (2d Cir. 2001).

Defendants concede that the Complaint alleges Roper was involved in matters of

13

public concern when she ran for office in 2001 and that she suffered adverse employment action when she was terminated.  See generally Pappas v. Giuliani, 290 F.3d 143, 152 (2d Cir. 2002) (noting that to constitute a matter of public concern, an employee's speech must "relate to a matter of political, social, or other concern to the community" and that "the employee must speak as a citizen upon matters of public concern, not simply as an employee upon matters of personal interest"); see also Benedict v. Town of Newburgh, 95 F. Supp. 2d 136, 138 (S.D.N.Y. 2000) (finding that an employee's termination constituted adverse employment action). However, Defendants argue that the Complaint does not adequately allege a causal connection between Roper's protected First Amendment activities and her termination by Judge Carey.

Generally, a plaintiff can establish a causal nexus between her protected speech and an adverse employment action either "indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus."  Mandell, 316 F.3d at 383 (internal quotation omitted); see also Calabro v. Nassau Univ. Med. Ctr., 424 F. Supp. 2d 465, 472-73 (E.D.N.Y. 2006).

In this action, Roper conclusorily alleges that Judge Carey fired her because she was asked to do so by DA Hynes.  (Compl. ¶ 67.)  Roper also alleges that Hynes discussed his criminal investigation of Plaintiff with Judge Carey during the 2001 election, and that Judge Carey contacted Judge Sweeney in 2002 to inform him that Roper had been fired from a previous job.  (Compl. ¶¶ 64-65.)  These allegations are insufficient "to warrant the inference that [Roper's] protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech."  Morris, 196 F.3d at 110.  See also Romer v. Morgenthau, 119 F. Supp. 2d

346 (S.D.N.Y. 2004) (dismissing § 1983 claim against district attorney on grounds that the complaint was too general and conclusory to "support[] an inference that . . . [communication between defendants] was centered on, or led to a meeting of the minds among defendants about[,] denying [plaintiff] a cognizable constitutional right."); Delta Airlines v. Kramarsky, 650 F.2d 1287, 1298 (2d Cir. 1981) (noting that while a court must accept allegations in the Complaint as true for purposes of a Rule 12(b)(6) motion, it need not "assume the truth of conclusions of law or unwarranted factual inferences that have been pleaded").  Moreover, Roper's argument that the temporal proximity of her political activity in 2001 to her termination in 2003 gives rise to an inference of causation is without merit.  Courts in this Circuit generally require a much shorter time window to find an inference of causation.  See, e.g., Fago v. City of Hartford, No. 02 Civ. 1189, 2006 WL 860126, at *10 (D. Conn. Mar. 31, 2006) (Nevas, J.) (finding interval of two years too long to draw an inference of causation); Bartley v. Collins, No. 95 Civ. 10161 (RJH), 2006 WL 1289256, at *8 (S.D.N.Y. May 10, 2006) (drawing inference of causation based on three-day interval between protected activity and adverse action); Calabro v. Nassau Univ. Med. Ctr., 424 F. Supp. 2d 465, 473 (S.D.N.Y. 2006) (stating that "though there is no bright line rule, an adverse employment action following within a couple [of] months of the protected activity typically, indirectly establishes the causal connection").

Because Roper does not adequately allege a causal relationship between her constitutionally protected activities and her termination, her First Amendment claims against Judge Carey are dismissed.

(iii)    DA Hynes

Roper fails to allege adequately that DA Hynes was personally involved in the decision to initiate a criminal investigation against her.  Although there is a conclusory assertion

to that effect in the Complaint, Roper concedes that a Special Prosecutor was appointed in January 2002 due to DA Hynes' conflict of interest.  (Compl. ¶ 25.)  The Special Prosecutor was the individual responsible for investigating Ward's complaints and issuing the grand jury subpoena in May 2003, as well as seeking an indictment and commencing a criminal prosecution against Roper.  Indeed, there is no allegation in the Complaint that any specific action was taken by Hynes with respect to any of these matters prior to the appointment of a Special Prosecutor.  Likewise, Roper concedes that Judge Carey was the ultimate "decision-maker" over her employment, and she does not bring a claim for conspiracy.[3]  Accordingly, Roper does not plead facts sufficient to establish DA Hynes' personal involvement in the initiation of a criminal investigation, the commencement of a criminal prosecution, or the decision to terminate her employment, and her § 1983 claims against Hynes are dismissed.  See Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987) (dismissing claims against defendants where "the complaint [wa]s entirely devoid of any allegations of their personal involvement in" the alleged deprivations of rights and plaintiff had "failed to allege . . . that the[] defendants were directly and personally responsible for the purported unlawful conduct."); Davis v. County of Nassau, 335 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) ("A complaint that essentially regurgitates the relevant "personal involvement" standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal."); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236,

---

[3] Even if Roper's pleading could be read broadly to suggest that she intended to bring a claim for conspiracy, she has failed to plead the elements of such a cause of action with the required specificity.  See Angola v. Civiletti, 666 F.2d 1, 4 (2d Cir. 1981) ("[C]ertain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that, despite the general rule . . . detailed fact pleading is required to withstand a motion to dismiss.  A claim or a conspiracy to violate civil rights is a clear example."); see also Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 (2d Cir. 1981);  Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983); Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993).

240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotation omitted).

              b.    <u>Fourteenth Amendment Claims</u>

                   (i)     <u>Judge Kaye, Judge Lippman, and DA Hynes</u>

As set forth above, the Complaint does not plead personal involvement sufficient to state a claim against Judge Kaye, Judge Lippman or DA Hynes under § 1983.

                   (ii)     <u>Judge Carey</u>

                       (1.)    <u>Due Process</u>

The Complaint alleges Judge Carey's personal involvement only in Roper's termination.  Thus, this Court need only consider Roper's Fourteenth Amendment claims inasmuch as they concern that issue.

Roper claims that she was deprived of a property interest in her employment without due process of law.  In order to prevail on a due process claim, Roper must demonstrate that she had a protected property interest and that she was deprived of that interest without due process of law.  <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 285-86 (2d Cir. 2001); <u>Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington</u>, 31 F.3d 1191, 1194 (2d Cir. 1994).  "Employees at will have no protectable property interest in their continued employment. . . . But a protectable property interest may arise . . . if a contractual or statutory provisions guarantee continued employment absent 'sufficient cause' for discharge."  <u>Abramson v. Pataki</u>, 278 F.3d 93, 99 (2d Cir. 2002) (citations omitted); <u>see also</u> <u>Baron v. Port Auth. of N.Y. and N.J.</u>, 271 F.3d 81, 89 (2d Cir. 2001).

Roper does not allege the existence of any "contractual or statutory provisions" that grant her the right to work absent "sufficient cause" for discharge.  <u>Abramson</u>, 278 F.3d at

99.  To the contrary, Roper concedes that she was an "at will" employee who served at the

pleasure of Judge Sweeney.  (Compl. ¶¶ 60, 65.)  Although Plaintiff argues that Judge Sweeney,

and not the State, was the only person with the authority to dismiss her, that issue is analytically

distinct from whether Roper had a protectable property interest in her employment.  Courts have

repeatedly held that an at-will employment relationship is insufficient to give rise to a property

interest for purposes of a Fourteenth Amendment due process claim.  See, e.g., Bd. of Regents of

State Colls. v. Roth, 408 U.S. 564, 578 (1972); Goetz v. Windsor, 698 F.2d 606, 608-09 (2d Cir.

1983) ("[A]t will employees possess no protectable property interest in continued

employment."); Abramson, 278 F.3d at 99-101 (holding that even a longstanding employment

practice could not create a protected property interest where one did not otherwise exist).

Accordingly, Roper's due process claim against Judge Carey is dismissed.

(2.)   Equal Protection

            In addition, Roper alleges that she was denied her Fourteenth Amendment equal

protection rights when she was dismissed from her job while other non-minority court employees

were not dismissed for more serious infractions.  The Equal Protection Clause "is essentially a

direction that all persons similarly situated should be treated alike."  City of Cleburne, Tex. v.

Cleburne Living Ctr., 473 U.S. 432, 439 (1985); see also Sound Aircraft Servs., Inc. v. Town of

East Hampton, 192 F.3d 329, 335 (2d Cir. 1999).  To determine whether the Equal Protection

Clause has been violated, this Court must initially consider first "whether the claimed

constitutional deprivation resulted from the exercise of a right or privilege having its source in

state authority, and second, whether the private party charged with the deprivation could be

described in all fairness as a state actor."  Edmonson v. Leesville Concrete Co., 500 U.S. 614,

618-22 (1991) (citations omitted).  Judge Carey does not dispute that she meets these criteria.

To state a claim against Judge Carey for violation of her equal protection rights, Roper must plead that "(1) [she], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [her]." Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995) (internal quotation omitted).  Although the State Defendants contend that Roper does not claim she is part of a protected class, that contention is incorrect.  The Complaint avers that Plaintiff suffered discriminatory treatment compared with similarly situated court employees as a result of her status as a black, Hispanic woman – i.e., a member of several protected classes.[4]  Roper need not allege the disparate treatment with any specificity in her Complaint.  See, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (finding in the Title VII context that a plaintiff need not plead a prima facie case of employment discrimination to state a valid claim but rather need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"); Tamayo v. City of New York, No. 02 Civ. 8030 (HB), 2004 WL 137198, at *5 (S.D.N.Y. Jan. 27, 2004) (evaluating a motion to dismiss equal protection claims pursuant to the Title VII standard articulated in Swierkiewicz);

---

[4] Even if Roper had not alleged discrimination based on membership in a protected class, she could still prevail in what is known as a "class of one" equal protection claim.  See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (a valid equal protection claim may be brought by a "class of one" where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); see also Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005); DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003).  While the threshold of similarity between a plaintiff and the allegedly similarly situated individuals must be high to prevail on a "class of one" claim, the pleading burden on a motion to dismiss is considerably lower.  See Neilson, 409 F.3d at 104 ("In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high.") (citations omitted); DeMuria, 328 F.3d at 707 (finding on a motion to dismiss that there is no requirement that "a plaintiff identify in her complaint actual instances where others have been treated differently for the purposes of equal protection").  The Complaint satisfies Roper's pleading burden for a "class of one" claim.

<u>Malone v. City of New York</u>, No. 05 Civ. 2882 (DGT), 2006 WL 2524197, at *4 (E.D.N.Y. Aug. 30, 2006) (same).  Therefore, the State Defendants' motion to dismiss is denied with respect to Roper's equal protection claim against Judge Carey in her individual capacity.

c.    Abuse of Process

To state a claim for abuse of process, a plaintiff must allege "three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective."  <u>Curiano v. Suozzi</u>, 63 N.Y.2d 113, 116 (1984).  Roper claims that Hynes' filing of an affirmation on December 21, 2001 in support of the appointment of a Special Prosecutor constituted an issuance of process.  Roper also asserts that Hynes commenced a criminal investigation against her before the appointment of the Special Prosecutor, and that this action also constituted an issuance of process.

This Court need not reach the merits of Roper's claim for abuse of process.  "For § 1983 actions arising in New York, the statute of limitations is three years."  <u>Eagleston v. Guido</u>, 41 F.3d 865, 871 (2d Cir. 1994); <u>Owens v. Okure</u>, 488 U.S. 235, 250-51 (1989).  The acts complained of occurred in late 2001 and early 2002.  This action was filed in July 2005 – more than three years later.  Accordingly, Roper's abuse of process claim is dismissed without leave to replead.  <u>See</u> <u>Pinaud</u>, 52 F.3d at 1156-58 (dismissing § 1983 claims as time barred).

2.    The City

Under § 1983, municipalities may not be held liable on a theory of <u>respondeat superior</u>.  Rather, a municipality may be liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 694

(1978); Bd. of County Comm'rs of Bryan County Okla. v. Brown, 520 U.S. 397, 417 (1997).

The "official policy" requirement is intended to distinguish acts of the municipality from acts of employees of the municipality, and can be satisfied in three ways. Pembaur v. Cincinnati, 475 U.S. 469, 479-80 (1986); Brown, 520 U.S. at 417-18.  First, when "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy;" second, when a situation calls for such an obvious need to act that a prosecutor's failure to act constitutes deliberate indifference; and third, when an act of the policymaker violated a federal law, even where no rule was announced as "policy."  Brown, 520 U.S. at 417-18.  This applies even if the policymaker did not intend the particular action to control later decisions and if the policy maker engaged in only a single act.  Brown, 520 U.S. at 418.

In this case, there has been no allegation that that the City made a "generally applicable statement of policy" that violated a federal right.  Brown, 520 U.S. at 417.  Similarly, although the Complaint avers that Roper never saw any written policy concerning the treatment of indicted court employees, there is no allegation that there was an "obvious need" for such a policy and in any event the lack of a written policy does not by itself establish the deliberate indifference required by Brown.  See McLaurin v. New Rochelle Police Officers, 373 F. Supp. 2d 385, 401 (S.D.N.Y. 2005) ("An allegation that a municipality was 'deliberately indifferent' to the need to train, monitor, or supervise its employees, without alleging any facts beyond the specific instance giving rise to his complaint, generally fails to adequately to plead [sic] a custom or policy on the part of the municipality."); see also Middleton v. City of New York, No. 04 Civ. 1304 (JFB), 2006 WL 1720400, at *14 (E.D.N.Y. June 19, 2006) ("In order to survive a motion to dismiss, [a] plaintiff's complaint must contain specific factual allegations" of the

municipality's failure to act; allegations of "a single, isolated incident" are insufficient to state a claim.) (internal quotation marks omitted).

Finally, as to the third <u>Brown</u> prong, Roper has failed to meet her pleading burden.  DA Hynes is a City "policymaker" for purposes of <u>Brown</u> inasmuch as he was involved in personnel decisions at the District Attorney's office.  <u>Ying</u>, 996 F.2d at 536; <u>see also</u> <u>Walker v. City of New York</u>, 974 F.2d 293, 301 (2d Cir. 1992).  However, as discussed above, Roper was not employed by the District Attorney's office and she has not adequately pleaded that DA Hynes violated her federal rights in any respect.  Accordingly, Roper's § 1983 claims against the City are dismissed.

D.     <u>Section 1981 Claims</u>

To the extent Roper seeks to vindicate any independent rights under 42 U.S.C. § 1981, she must do so via claims under § 1983.  <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 735 (1989) ("[T]he express action at law provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor" (citation omitted)); <u>see also</u> <u>Anderson v. Conboy</u>, 156 F.3d 167, 176 n.17 (2d Cir. 1998) ("Of course, a claim against a state actor would have to be brought pursuant to 42 U.S.C. § 1983 . . . .").  <u>Jett</u> has been interpreted to encompass not only governmental entities but also individuals sued in their individual capacities who are "state actors."  <u>See</u> <u>Roddini v. City Univ. of N.Y.</u>, No. 02 Civ. 4640 (LAP), 2003 WL 435981, at *5 (S.D.N.Y. Feb. 21, 2003).  Accordingly, § 1983 provides the sole remedy against all Defendants for violations of rights guaranteed by § 1981, and Roper's claims under § 1981 are dismissed.

There is some question as to whether § 1981(c), added to § 1981 as part of the

Civil Rights Act of 1991, creates an implied private right of action against state actors under §

1981, thereby statutorily overruling Jett.  Compare Dennis v. County of Fairfax, 55 F.3d 151 (4th

Cir. 1995) (amendment did not disturb Jett), with Fed'n of African Am. Contractors v. City of

Oakland, 96 F.3d 1204, 1205 (9th Cir. 1996) (Section 1981(c) overrules Jett).  Since the Second

Circuit has not yet ruled on this issue, see Anderson, 156 F.3d at 178 n.19, this Court adopts the

rule employed by other courts in this District and declines to deviate from the Supreme Court's

analysis of § 1981 in Jett.  See Roddini, 2003 WL 435981, at *5; Mack v. Port Auth., 225 F.

Supp. 2d 376, 383 (S.D.N.Y. 2002).  In any event, as noted, Roper does not assert any

substantive right under § 1981 that is not encompassed in her § 1983 claims.

      E.      <u>Intentional Infliction of Emotional Distress</u>

      In order to state a claim for intentional infliction of emotional distress, a plaintiff

must allege (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3)

a causal connection between the conduct and the emotional distress; and (4) severe emotional

distress.  Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996) (citing Howell v. N.Y.

Post Co., 81 N.Y.2d 115, 121 (1993)).  "Liability has been found only where the conduct has

been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

Howell, 81 N.Y.2d at 122 (internal quotation marks omitted).  So high is the standard for

"extreme and outrageous conduct" that the New York Court of Appeals noted in Holwell that it

had rejected "every one" of the claims it had considered on the ground that the conduct alleged

was not sufficiently outrageous.  Holwell, 81 N.Y.2d at 122; see also Freihofer v. Hearst Corp.,

65 N.Y.2d 135, 143 (1985) (dismissing claim for the intentional and illegal publication of

confidential court files); Burlew v. Am. Mut. Ins. Co., 63 N.Y.2d 412, 417 (1984) (dismissing a

complaint alleging reckless or intentional refusal to authorize an operation for a work-related injury); Fischer v. Maloney, 43 N.Y.2d 553, 557 (1978) (dismissing complaint alleging deliberate commencement of litigation for the purpose of maligning, harassing and intimidating the plaintiff).  The statute of limitations on claims for intentional infliction of emotional distress is one year.  See N.Y. C.P.L.R. 215; Kwarren v. Am. Airlines, 303 A.D.2d 722, 757 N.Y.S.2d 105 (2d Dep't 2003)

    Roper's claim for intentional infliction of emotional distress is predicated on three primary contentions:  first, that Defendants wrongfully commenced a criminal investigation against her; second, that Defendants wrongfully initiated a criminal prosecution against her; and third, that Defendants wrongfully terminated her employment.  With the exception of the criminal prosecution against Roper, all of the conduct on which she bases her claim for intentional infliction of emotional distress occurred more than two years prior to the commencement of this action.  Thus, those claims are barred by the applicable statute of limitations.  See N.Y. C.P.L.R. 215; Kwarren, 303 A.D.2d 722, 757 N.Y.S.2d 105 (dismissing claim for intentional infliction of emotional distress where conduct giving rise to the claim occurred more than one year before the action was filed).

    As to Roper's third basis for the intentional infliction of emotional distress claim, the Complaint does not adequately allege that any of the Defendants commenced the prosecution against Roper; that decision rested with the Special Prosecutor, who is not a defendant in this case.  Moreover, even if Roper had pled personal involvement by one of the defendants, and even if her prosecution could meet the New York Court of Appeals' rigorous standard for "extreme and outrageous conduct," her claim must still be dismissed.  New York's Court of Appeals has opined that "it may be questioned whether the doctrine of liability for intentional

infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability, [such as] malicious prosecution and abuse of process." Fischer v. Maloney, 43 N.Y.2d 553, 557-58 (1978). Two of New York's appellate courts have unequivocally decided that conduct which falls within the scope of some other tort is not actionable as intentional infliction of emotional distress and many recent decisions in this District have applied that rule.[5] McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 682 N.Y.S.2d 167, 169 (1st Dep't 1998) (claim "[p]recluded where the offending conduct is embraced by a traditional tort remedy"); Butler v. Del. Otsego Corp., 610 N.Y.S.2d 664, 665-66 (3d Dep't 1994) ("It is well settled that a cause of action for intentional infliction of emotional distress should not be entertained where the conduct complained of falls well within the ambit of other traditional tort liability" (internal quotations omitted).); see also Lewis v. United States, No. 97 Civ. 0624E (SC), 1999 WL 222611, at *2 (S.D.N.Y. Mar. 26, 1999) ("[T]o the extent [plaintiff's] emotional distress claim is based on [an] allegedly wrongful arrest and/or . . . subsequent prosecution, such [a claim] fails as a matter of law."); Lian v. Sedgwick James of N.Y., Inc., 992 F.Supp. 644, 651 (S.D.N.Y. 1998); Silberstein v. Advance Magazine Publishers, Inc., 988 F.Supp. 391, 393-94 (S.D.N.Y. 1997); Levin v. McPhee, 917 F.Supp. 230, 242 (S.D.N.Y. 1996). In this case, Roper asserts a separate claim for abuse of process, and the facts averred in the Complaint could give rise to a claim for malicious prosecution (though Plaintiff denies that she has brought one). Accordingly, Roper's claim for intentional infliction of emotional distress "falls within the scope of some other tort[s]" and is dismissed without leave to replead.

---

[5] The Second Circuit has questioned whether, under New York law, a claim for intentional infliction of emotional distress is truly barred as a matter of law when the underlying conduct is actionable under another theory of tort liability. Bender v. City of New York, 78 F.3d 787, 790-92 (2d Cir. 1996) (discussing Fischer). However, Bender was decided prior to McIntyre, Lian and Silberstein and the Second Circuit has never decided the issue.

F.      Prima Facie Tort

To state a claim for prima facie tort, Roper must allege: (1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful.  Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 571 (2d Cir. 1990) (citing Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 322 (1983)).  The touchstone is "disinterested malevolence," meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm.  Twin Labs, 900 F.2d at 571.  Motives other than disinterested malevolence, such as profit, self-interest, or business advantage will defeat a prima facie tort claim.  Twin Labs, 900 F.2d at 571 (internal quotation marks omitted); see also Marcella v. ARP Films, Inc., 778 F.2d 112, 119 (2d Cir. 1985) ("[T]he sole motivation for the damaging acts must have been a malicious intention to injure the plaintiff.").

In this action, the Complaint on its face alleges motives other than disinterested malevolence; Roper contends that DA Hynes sought to investigate her, prosecute her and terminate her employment, not only to harm her but also to eliminate her as a political rival. Similarly, the requirement that a plaintiff plead special damages "requires that the alleged victim . . . aver with specificity the amount of damages causally related to the tortious act.  In order to state a cause of action for prima facie tort, special damages must be alleged with sufficient particularity to identify actual losses . . . [and] round sums without any attempt at itemization are insufficient."  Bear, Sterns Funding, Inc. v. Interface Group Nev., Inc., 361 F. Supp. 2d 283, 306 (S.D.N.Y. 2005) (internal quotation marks omitted).  The Complaint alleges that Roper is entitled to damages from all Defendants, but it does not specifically state the cumulative total of such damages, much less itemize which damages are attributable to any particular incident of

allegedly tortious conduct.  Thus, Roper's claim for prima facie tort is dismissed for failure to plead special damages.  <u>Hill v. City of New York</u>, No. 05 Civ. 9473 (RMB), 2006 WL 2347739, at *5-6 (S.D.N.Y. Aug. 14, 2006) (dismissing claim of prima facie tort for failure to plead special damages); <u>Silver v. Kuehbeck</u>, No. 05 Civ. 0035 (RPP), 2005 WL 2990642, at *14 (S.D.N.Y. Nov. 7, 2005) (same).

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part.  In sum, all of Roper's claims against the State Defendants, the City Defendants and the Individual Defendants are dismissed except her equal protection claim against Judge Carey.

Roper's claims against the State, the OCA and the UCS, her claims against all of the Individual Defendants for acts taken in their official capacities, her claims against DA Hynes for acts undertaken in his individual capacity in connection with the criminal prosecution against her, her § 1981 claims and her claims for intentional infliction of emotional distress and prima facie tort are all dismissed without leave to replead.

Roper's § 1983 claims against the City, her claims Judge Kaye, Judge Lippman and DA Hynes for acts taken in their individual capacities, and her § 1983 claims against Judge Carey in her individual capacity (except for the equal protection claim against Judge Carey), are dismissed with leave to replead.

Dated: September 27, 2006
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

28

*Counsel of Record*:

Ezra B. Glaser, Esq.
Law Office of Ezra B. Glaser
3985 Gouverneur Avenue, Suite 12D
Bronx, NY 10463
*Counsel for Plantiff*

Eamonn F. Foley, Esq.
The New York City Law Department
100 Church Street
New York, NY 10007
*Counsel for City Defendants*

Monica Anne Connell, Esq.
New York State
 Office of the Attorney General
120 Broadway, 24th Floor
New York, NY 10271
*Counsel for State Defendants*